Stewart, J.
The present action was instituted by plaintiff under the authority of Section 12206, General Code (Section 1341.19, Revised Code), which reads:
“A surety may maintain an action against his principal to compel him to discharge the debt or liability for which the surety is bound, after it becomes due.”
The question presented to us is whether a part or all of the debt due to the society is the principal obligation of defendants, and the obligation of plaintiff to such debt is that of surety only.
It appears that plaintiff and defendants were residents of Pittsburgh, Pennsylvania, and that defendants were the owners of a farm at Hartville in Stark County.
Plaintiff was between the ages of 10 and 16 years when the various policies were issued. He was the insured in the policies and defendants were the beneficiaries.
Plaintiff testified that when the policies were taken out by defendants they told him that they were taken out for him and *109 they would give them to him when he was 21 years of age; that the policies were to be part payment for his work; and that when he was 14 years of age he quit school, managed the farm and worked on it until he was 21 years of age in 1940.
Produce was raised on the farm, which plaintiff transported to Pittsburgh and which defendants sold in the markets there.
When plaintiff became 21 years of age he married, and defendants promised to turn the policies over to him at that time, which they did not do, and, as a result of their failure to do so, he left the farm and worked two years for a concern in Pittsburgh.
Thereupon, defendants asked plaintiff to come back to the farm and stated that if he would do so they would live up to their agreement and turn the policies over to Mm. At that time defendants told plaintiff that they owed premiums on the policies, which they had borrowed from the insurance companies. Defendants told plaintiff that, if he would come back to the farm and work for them, managing the farm and helping defendants out in every way that he could, they would clear the policies of the indebtedness of $8,900 which defendants had incurred on them, and that when the policies were cleared defendants would turn them over to plaintiff and he could do with them as he wished. Pursuant to such representation, plaintiff returned to his work on the- farm and continued his work there for at least six years.
In 1945 defendants asked plaintiff to assign the policies and to sign a note to the society, which would take over the obligation at a lower rate of interest, if plaintiff, as the insured, assigned the policies and signed the note.
Plaintiff had had nothing to do originally with the incurring of the obligation as to the $8,900.
Defendant Myrtle E. Brenckle testified:
“$8,900 was premiums and as they went along I paid what I had to, and the interest to be added to it, and it didn’t take too long to get there. My interest rates were high and I took it to the Society for Savings so that I could get on my feet and pay it.”
In December 1945 the farm had had a very good season. *110 A considerable amount of money was made from it, all the debts of the farms and houses were paid off with the exception of the insurance policies, and defendant Myrtle E. Brenckle told plaintiff that the very next thing which would be paid off would be the debts on the policies.
Plaintiff’s testimony was corroborated by his wife.
It appears that thereafter defendants secured two additional loans from the society in the sums of $6,600 and $1,500. The original $8,900 -was merged with these loans so that finally the society held a note for $17,000, signed with plaintiff’s name but without his knowledge or consent.
Plaintiff had been told that the loans against the policies had been paid off and the policies were in his mother’s desk, and he knew nothing about the note for $17,000 or the fact that an additional loan of $8,100 had been made, until some time in February or March 1951. One of the defendants had not only signed plaintiff’s name to the note for $17,000 but as endorser on the checks for $6,600 and $1,500, which had been made payable to plaintiff, without his knowledge or consent, and the money was used by defendants for purposes which they did not detail.
When the society, in conference with plaintiff, learned of the situation with reference to its loans, it entered into an agreement with plaintiff to the effect that plaintiff did not sign the note for $17,000 and disclaimed all liability thereon except as to the sum of $8,900 for which plaintiff did sign a note to the society; that in consideration of the society taking no action with respect to the policies prior to December 1, 1951, plaintiff would pay the premiums up to date on the policies; and that if the principal amount of $17,000 should not be paid in full with interest on or before December 1, 1951, the society might exercise all the rights granted to it under the assignments without, however, asserting any personal claim against plaintiff beyond the sum of $8,900.
It is apparent that the society is entitled to full payment of its note for $17,000, with interest, regardless of the legal relation as to liability between plaintiff and defendants. That leaves the sole question as to what that legal relation is.
It is axiomatic that if one person is principally liable for *111 a debt and another person is a mere surety for the payment of that debt, the latter, if he is compelled to pay the debt, has a just claim for full reimbursement from the principal debtor.
Under the statute above quoted, the surety may maintain an action against the principal to compel the principal to discharge the debt after it becomes due.
It must be remembered that the appeal to the Court of Appeals in the present case was on questions of law only. In that appeal there was no assignment of error to the effect that the judgment of the Court of Common Pleas is against the weight of the evidence, and no such finding was made.
There were only three witnesses in the trial of the cause, the plaintiff, his wife, and defendant Myrtle E. Brenckle. The latter’s denials of plaintiff’s testimony were vague and general.
Plaintiff’s testimony, if believed, was sufficient to support the trial court’s findings, and, therefore, since the Court of Appeals did not reverse on the weight of the evidence, those findings are binding unless unjustified as a matter of law.
The Court of Appeals was of the opinion that because plaintiff himself signed the $8,900 note he is principally liable for that sum, although not liable for the $8,100 in the merged note for $17,000 to which his signature was affixed without his knowledge or consent.
In our opinion such a conclusion is not justified. The $8,900 was borrowed by defendants, who had taken out the policies on plaintiff’s life and kept them. Plaintiff knew nothing about such a borrowing until he was asked to sign the note for $8,900 to the society in order that defendants might refinance their debt at a lower rate of interest. It was still defendants’ debt, as was testified by not only plaintiff but defendant Myrtle Brenckle.
Plaintiff signed the $8,900 note only because the society would not refinance defendants’ debt without plaintiff’s signature to the note, since he was the insured in the policies.
It seems obvious to us, therefore, that plaintiff is only a surety on the $8,900 obligation of defendants, is not obligated in any way as to the additional $8,100 of defendants’ indebtedness and is not even a surety thereon except to the extent that *112 he signed an agreement that the society might avail itself of its rights under the policy assignment by forbearing to exercise such rights until a definite future time.
It is clear, therefore, that by virtue of Section 12206, General Code (Section 1341.19, Revised Code), the Court of Common Pleas was not in error in arriving at its judgment.
The judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taet, JJ., concur.